## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

INFRASTRUCTURE MANAGEMENT
PARTNERSHIP,

      *Plaintiff*,

      v.

THE UNITED STATES,

      *Defendant*.

Case No. _____

Judge _____

## **COMPLAINT**

Pursuant to 28 U.S.C. § 1491(b) and Appendix C of the Rules of the U.S. Court of Federal Claims ("RCFC"), Plaintiff Infrastructure Management Partnership ("Plaintiff" or "IMP"), through the undersigned counsel, files this post-award bid protest Complaint against the United States, acting through the United States Department of the Navy (the "Navy" or the "Agency"). Specifically, this protest challenges the Navy's decision to award a single-award indefinite-delivery, indefinite-quantity ("IDIQ") contract (the "Contract") to CDM Federal Programs Corporation ("CDM") pursuant to Request for Proposals No. N6247024R0053 ("RFP" or the "Solicitation"). As explained below, IMP seeks declaratory relief, preliminary injunctive relief, and permanent injunctive relief due to the Agency's errors in this procurement.[1]

---

[1] IMP originally submitted a bid protest pre-filing notice on October 14, 2025 stating that it intended to file this Complaint on October 15, 2025. However, shortly before IMP was going file on October 15, 2025, IMP received a communication from counsel for the Government that the Agency agreed to voluntarily stay performance of the Contract for the duration of the lapse in appropriations resulting from the ongoing government shutdown. As of this filing, IMP has not received any communications regarding whether the Agency will continue the voluntary stay of performance now that appropriations have been restored and the government has reopened.

## SUMMARY OF THE CASE

1.    This protest challenges that the Navy's decision to award the Contract to CDM under the Solicitation for Professional Services to support the Navy's Public Works Directorate work within the Naval Facilities Engineering Systems Command's ("NAVFAC") Atlantic and Pacific Area of Operations, including in the Continental United States ("CONUS") and Outside the Continental United States ("OCONUS").

2.    The Navy's award decision was arbitrary because it was contrary to the terms of the Solicitation.  The Solicitation provides that the Navy would consider all five non-price factors, taken together, as approximately equal to price for the purpose of determining the best value to the Government.  The Solicitation stated that where the proposals' non-price factors proposals were essentially equal between offerors, the price factor would increase in relative importance to the non-price factors.  Contrary to these express terms, the Navy awarded the Contract to CDM ███ ███████████████████████████████████████████████████████ ████████████    Thus, the Navy's award decision was unlawful.

3.    Based on the information provided in the debriefing and enhanced debriefing, the Navy's best value determination was arbitrary ███████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████

4.    The Navy also failed to adequately document its award decision.  The Navy did not provide a rationale for its award decision until its response to IMP's enhanced debriefing follow-

up questions. The sparse information provided in the enhanced debriefing did not explain the Navy's departure from the terms of the Solicitation.

5. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████.

6.     As stated in more detail below, the Navy's award decision was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law because it was contrary to the terms of the Solicitation. Absent these prejudicial errors, IMP had a substantial chance of receiving an award. Thus, IMP is entitled to a declaratory judgment that the Navy's award decision was improper and a permanent injunction ordering the Navy to make a new award decision that complies with the stated terms of the Solicitation.

## PARTIES

7.     Plaintiff IMP is a joint venture between AECOM Technical Services, Inc. ("AECOM") and Tetra Tech, Inc. ("Tetra Tech").

8.     Defendant is the United States of America, acting through the Navy, a federal agency.

███████████████████████████████████████████

## JURISDICTION & VENUE

9.     This Court has jurisdiction over this bid protest under the Tucker Act, 28 U.S.C. § 1491(b)(1), which vests the Court with the authority to "render judgment on an action by an interested party objecting to . . . the award of a contract or any alleged violation of statute or regulation in connection with a procurement[.]"  Since this IMP objects to the Navy's award of the Contract to CDM as arbitrary and capricious, this case is within this Court's jurisdiction.

10.    Similarly, since this bid protest is in connection with the award of a contract by a federal agency, venue is proper in this Court pursuant to 28 U.S.C. § 1491(b).

## STANDING

11.    To demonstrate standing under the Tucker Act, a party must demonstrate that it is an interested party and that it was prejudiced by the agency's errors.  *REV, LLC v. United States*, 91 F.4th 1156, 1163 (Fed. Cir. 2024).  An interested party is ""an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract."  *Myers Investigative and Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002) (citations omitted); *see also Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed Cir. 2001).   Furthermore, "to prove the existence of a direct economic interest, a party must show that it had a 'substantial chance' of winning the contract." *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013).

12.    As an actual offeror under the Solicitation denied award by the Navy's decision to award to CDM, IMP has standing to bring this protest as an interested party.

13.    The Navy rated IMP second of three proposals received, considering non-price and price factors.  (*See* Ex. D at 7.)  Had the Navy evaluated proposals in accordance with the

Solicitation, IMP would undoubtedly have been selected for contract award.  Thus, but for the Navy's errors, IMP had a significant chance of receiving an award under the Solicitation.

## FACTUAL BACKGROUND

### Infrastructure Management Partnership

14.     AECOM and Tetra Tech formed IMP on July 17, 2024 for the purpose of pursuing the Solicitation and solidifying the 20-year relationship between AECOM and Tetra Tech. (Ex. B-2 at PDF 16.)  Furthermore, through the creation of IMP, AECOM and Tetra Tech could offer the services of both joint venture members to the Navy.

15.     AECOM serves as the managing partner for IMP.  (*See id*. at PDF 16.)

### The Solicitation

#### *Overview*

16.     The Navy issued the Solicitation on January 17, 2025, seeking to award a single IDIQ fixed-price contract for "Professional Services to Support the Navy's Public Works Directorate Work within The Naval Facilities Engineering Systems Command's (NAVFAC) Atlantic and Pacific (CONUS And OCONUS, Worldwide) Area Of Operations (AO)." (Ex. A-1 at 2.)  The Solicitation was amended twice during the course of the procurement.  (*See* Ex. A-2; Ex. A-3.)

17.     NAVFAC manages, plans, builds, and maintains Naval facilities and infrastructure facilities at Naval Installations worldwide, including utility management, cybersecurity and control systems, energy security, and fuel sourcing.  (Ex. A-1 at 5.)

18.     Under the contract anticipated by the Solicitation, a contractor would provide "professional knowledge, skills, and experience in electrical, mechanical, and civil utility

systems." (Ex. A-1 at 5.)  In line with the wide breadth of NAVFAC's duties, contractors were required to have experience in the following areas:

> [U]tility management; utility operation and maintenance; electric power production and distribution; steam production and distribution to include combined heat and power (CHP); natural gas distribution; water, wastewater, and industrial wastewater treatment; water distribution (potable and non-potable systems); wastewater and storm water collection; environmental permitting and asset management; utility privatization and out-sourcing; cyber security and control systems; advanced metering; energy management; energy security; energy and water conservation; project financing; utility regulation; utility rate making and analysis; commodity and service pricing and procurement; supply and demand practices; market design; and fuel sourcing.

(*Id.*)

19.    The Navy assigned North American Industrial Classification System ("NAICS") Code 541330, Engineering Services to this procurement.  (Ex. A-1 at 2.)

20.    The IDIQ contract awarded pursuant to the Solicitation would have a one (1) year base period with four (4) option years, not to exceed a total of sixty (60) months.  (*Id.* at 3.) Additionally, the total maximum value of orders placed against the contract, inclusive of any options exercised, would be $90,000,000.00.  (*Id.*)

21.    The Solicitation solicited proposals on a full and open unrestricted basis.  (Ex. A-1 at 2.)

### *Proposal Submission Requirements and Evaluation Criteria in the Solicitation*

22.    An offeror would submit the two volumes for its proposal on the Procurement Integrated Enterprise Environment ("PIEE").  (Ex. A-1 at 44.) Volume I would contain the offeror's price proposal.  (*See id.* at 45–48.)  Volume II would contain the non-price proposal

submission requirements, including information on Corporate Experience, Technical/Management

Approach, Safety, Small Business Utilization, and Past Performance.  (*See id.* at 48–53.)

23.    The Solicitation provided for the evaluation of five non-price factors:

Factor 1 – Corporate Experience

Factor 2 – Technical/ Management Approach

Factor 3 – Safety

Factor 4 – Small Business Utilization

Factor 5 – Past Performance on Recent, Relevant Projects

(*Id.* at 54.)

24.    Under the Solicitation, the Contract would be awarded to the proposal determined

"to represent the best value – the proposal most advantageous to the Government, ***price and other***

***factors considered***." (Ex. A-1 at 54 (emphasis added).)

25.    To determine best value, the Solicitation advised that the non-price and price factors

would be weighed as follows:

The relative order of importance of the non-price evaluation is the
technical factors, Factors 1,2,3, 4, are of equal importance to each
other and, when combined are equal in importance to the past
performance evaluation/performance confidence assessment factor,
Factor 5. When the proposal is evaluated as a whole, ***the technical***
***factors and past performance/performance confidence assessment***
***factor combined (i.e., the non-price evaluation factors) are***
***approximately equal to price.***

(*Id.* at 54 (emphasis added).)

26.    The Solicitation stated that "[*t*]*he importance of price will increase if the Offerors'*

***non-price proposals are considered essentially equal in terms of overall quality***, or if price is so

high as to significantly diminish the value of a non-price proposal's superiority to the Government." (*Id.* at 54–55 (emphasis added).)

27. The Solicitation anticipated making contract award without discussions.

**IMP's Proposal**

28. IMP submitted a timely proposal on February 22, 2025



**The Navy's Award Decision and Debriefing**

30. The Navy received three proposals in response to the Solicitation, including proposals from IMP and CDM. (*See* Ex. D at 7.)



32.     The Navy used adjectival ratings to assign an overall rating to each technical proposal according to the four technical factors (i.e., Factors 1–4). (*See id.* at 2.) The adjectival ratings used were Outstanding, Good, Acceptable, Marginal, and Unacceptable. (*Id.*) According to the Navy, "[a]ssignment of an adjectival rating represented the culmination of an assessment of the level of risk on each factor, based on analysis of the specific features found in each individual proposal." (*Id.*)  The Navy assigned each proposal a confidence rating for Factor 5, past performance, of Substantial Confidence, Satisfactory Confidence, Limited Confidence, No Confidence, or Neutral Confidence. (*Id.*)







40.    On September 19, 2025, the Navy sent an unsuccessful offeror notice to IMP identifying CDM as the awardee under the Solicitation.  (*See* Ex. C.)  IMP timely request a post-award debriefing.

41.    On September 26, 2025, IMP received a debriefing letter from the Navy.  (*See* Ex. D.)





44.    IMP subsequently submitted timely enhanced debriefing questions to the Navy.

45.    IMP received the Navy's response to IMP's debriefing questions on October 6, 2025.  (*See* Ex. E, IMP Enhanced Debriefing Questions.)







48.     This protest follows.

## COUNT I

### The Navy's Best Value Trade-off Decision was Contrary to the Terms of the Solicitation

49.     IMP incorporates the allegations in the preceding paragraphs by reference.

50.     This Court shall set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2012); *see Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004).

51.     An agency's evaluation of a proposal is arbitrary and capricious if it is contrary to the terms of the solicitation.  *See Frawner Corp. v. United States*, 161 Fed. Cl. 420, 447 (2022) (finding an agency's evaluation of an offeror's past performance arbitrary and capricious when it "directly conflicts with the terms of the Solicitation."); *AM Gen., LLC v. United States*, 115 Fed. Cl. 653, 672-74 (2014).  FAR 15.305(a) states that "an agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation."  Accordingly, "[i]t is hornbook law that agencies must evaluate proposals and make awards based on the criteria stated in the solicitation." *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 386 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004).

52.     In interpreting a Solicitation, the Court utilizes "the same principles concerning the interpretation of Government contracts to the interpretation of Government solicitations." *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1344 (Fed. Cir. 2021). Critically, "[i]f the provisions are clear and unambiguous, the court must give them 'their plain and ordinary meaning.'"  *ARxIUM, Inc. v. United States*, 136 Fed. Cl. 188, 198 (2018) (quoting

*Banknote Corp.*, 365 F.3d at 1353).   Additionally, the Court must "consider the Solicitation as a whole and interpret "it in a manner that harmonizes and gives reasonable meaning to all of its provisions." *Banknote Corp.*, 365 F.3d at 1344.  Furthermore, the Court give will give particular weight to language such as "will" that imposes a mandatory obligation.  *See New England Tank Indus. of New Hampshire, Inc. v. United States,* 861 F.2d 685, 694 (Fed. Cir. 1988) (explaining that terms such as "will" and "will not" are mandatory); *Frawner*, 161 Fed. Cl. at 447.

53.    The Navy's best value tradeoff and ultimate award decision was contrary to the express terms of Section M.2 of the Solicitation.

54.    Section M.2(2) provided that the Navy would weigh the non-price factors as follows:

> The relative order of importance of the non-price evaluation is the technical factors, Factors 1,2,3, 4, are of equal importance to each other and, when combined are equal in importance to the past performance evaluation/performance confidence assessment factor, Factor 5. When the proposal is evaluated as a whole, the technical factors and past performance/performance confidence assessment factor combined (i.e., the **non-price evaluation factors**) are **approximately equal to price**.

(Ex. A-1 at 54 (emphasis added).)

55.    Furthermore, Section M.2(2) further mandated that "[t]he importance of price **will increase** if the Offerors' **non-price proposals are considered essentially equal in terms of overall quality** . . . ." (*Id.*)  Thus, if non-price proposals received the same ratings, the Solicitation required the Navy to give more weight to price.

56.    Given the results of the evaluation as documented by the Navy, the Solicitation required the Navy to make award to IMP.



58.  ▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭

▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭▭

▭▭▭▭▭▭▭▭▭  Thus, the Navy's decision to award the Contract to CDM was arbitrary and clearly contrary to the Solicitation's terms.

59.  This error prejudiced IMP, as but for the Navy's failure to follow the Solicitation's evaluation scheme, IMP would have been selected for award.

60.  Accordingly, because the Navy's award decision was contrary to the express terms of the Solicitation, the Navy award decision should be set aside as unlawful.

## COUNT II

### The Navy's Best Value Tradeoff Decision was Arbitrary and Capricious

61.  IMP incorporates the allegations in the preceding paragraphs by reference.

62.  Under FAR 15.101-1, an agency performs a tradeoff analysis between price and non-price factors when "it may be in the best interest of the Government to consider [an] award to other than the lowest priced offeror or other than the highest technically rated offeror." FAR 15.101-1(a). While an agency's best value determination is entitled to considerable deference, that deference is not unlimited. The best value determination must still be rational, consistent with the scheme in the solicitation, and adequately documented. *See FirstLine Trans. Sec., Inc. v. United*

*States*, 100 Fed. Cl. 359, 376 (2011) (finding an agency's best value tradeoff decision irrational when it was inconsistent with the solicitation's evaluation scheme).



64.



██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

██ ██ ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████

70.    █████████████████████████████████████████████

██████████████████████████████████████████████████████

██████    But for the Agency's arbitrary best value tradeoff, IMP would have been awarded the Contract.

71.    Accordingly, because the Navy's award decision was not properly documented and was arbitrary, the Navy's award decision should be set aside as unlawful.

### COUNT III

████████████████████████████████████████████████████
████████████████████████████

72.    IMP incorporates the allegations in the preceding paragraphs by reference.

73.    An agency is obligated to give a proposal a fair reading which considers the proposal as a whole. *See 22nd Century Techs., Inc. v. United States*, 176 Fed. Cl. 389, 398 (2025);

████████████████████████████████████████████████████████████

*IBM Corp. v. United States*, 119 Fed. Cl. 145, 157 (2014) ("[T]he Court should read the proposal as a whole in order to discern the meaning of any individual parts.").  An Agency's decision is also arbitrary when it fails to consider an aspect of the problem.  *Ala. Aircraft*, 586 F.3d at 1375.



19



████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

83.    Accordingly, because the Navy's evaluation was arbitrary, the Navy's award decision should be set aside as unlawful.

## BASIS FOR INJUNCTIVE RELIEF

84.    IMP incorporates the allegations in the preceding paragraphs by reference.

85.    The Court should issue a permanent injunction enjoining performance of the awarded Contract and require the Navy to conduct a new best value tradeoff and make a new award decision in accordance with the terms of the Solicitation.

86.    Under the Tucker Act, this Court may "award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2).

87.    The Court must consider the following factors when making a determination for injunctive relief: (1) whether the plaintiff has succeeded on the merits; (2) whether the plaintiff has shown irreparable harm without the issuance of the injunction; (3) whether the balance of the harms favors the award of injunctive relief; and (4) whether the injunction serves the public interest. *See PGBA, LLC v. United States,* 389 F.3d 1219, 1228-29 (Fed. Cir. 2004))

88.    As discussed above, IMP's protest will succeed on the merits.

████████████████████████████████████████████████

89.    Furthermore, absent an injunction, IMP will be immediately and irreparably harmed by the lost opportunity to receive award under the Solicitation due to the Navy's arbitrary and capricious evaluation.  *MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 552 (2011).

90.    The balance of harms also favors IMP.  The harm to the Navy in this instance is minimal insofar as it consists only of re-evaluation of submitted proposals.  The harm to IMP, on the other hand, is the lost award of the Contract based on the Navy's arbitrary and capricious procurement decisions.  The harm to IMP is therefore greater and the balance of harms favors IMP.

91.    Finally, the public interest favors the granting of injunctive relief.  Government procurements should be administered in a fair and rational process, resulting in award decisions consistent with solicitation requirements and procurement law and regulations.  *See, e.g., Bilfinger Berger AG Sede Secondaria Italiana v. United States*, 94 Fed. Cl. 389, 393 (2010).  Thus, the public interest favors injunctive relief in this case.

92.    Accordingly, injunctive relief would be proper in this instance because all of the injunctive relief factors favor IMP.

## **PRAYER FOR RELIEF**

Accordingly, IMP respectfully requests that this Court enter judgment for the Plaintiff and further requests that the Court:

1.    Declare that the Navy's award decision was arbitrary, capricious, an abuse of discretion, and contrary to law;

2.    Issue such preliminary and permanent injunctions as are necessary[5]  (a) to prevent the Navy from proceeding with the Contract as currently awarded; and (b) to require the Navy to reevaluate IMP's proposal in accordance with the Solicitation and make a new best value determination and award decision based on this reevaluation;

3.    Alternatively, issue tailored relief remanding this matter to the Navy to evaluate IMP's proposal and make award decisions reasonably and in accordance with the Solicitation in light of the Court's decision; and

4.    Grant such further relief as the Court deems just and proper, including an award of attorneys' fees and costs.

Dated: November 14, 2025                    Respectfully submitted,

                                            **HOLLAND & KNIGHT LLP**


                                             s/ Holly A. Roth
                                            Holly A. Roth
                                            1650 Tysons Blvd, Suite 1700
                                            Tysons, VA 22102
                                            Phone: (703) 720-8576
                                            Facsimile: (703) 720-8610
                                            E-mail: holly.roth@hklaw.com

                                            *Counsel for Infrastructure Management Partnership, LLC*

*Of Counsel*:

Tanner N. Slaughter
Ben R. Smith

---

[5] Counsel for IMP and the government have not discussed a continuation of the voluntary stay. IMP does not intend to seek a preliminary injunction in the hopes that the Navy will agree to stary award until this protest is award.  However, should the Navy refuse to voluntarily stay the award, IMP reserves the right to file a motion for a preliminary injunction.

Holland & Knight LLP
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102
Phone: (703) 720-8579 (Slaughter)
        (703) 720-8610 (Smith)
E-mail: tanner.slaughter@hklaw.com (Slaughter)
        ben.smith@hklaw.com (Smith)


Exhibits:
Exhibit A: Solicitation Documents
        Exhibit A-1: RFP No. N6247024R0053
        Exhibit A-2: Amendment 1 to RFP No. N6247024R0053
        Exhibit A-3: Amendment 2 to RFP No. N6247024R0053
Exhibit B: Proposal Documents
        Exhibit B-1: IMP Proposal Volume I, Price Proposal
        Exhibit B-2: IMP Proposal Vol. 2, Non-Price Proposal
Exhibit C: Unsuccessful Offeror Letter (September 19, 2025)
Exhibit D: IMP Debriefing Letter (September 26, 2025)
Exhibit E: IMP Enhanced Debriefing Questions (October 6, 2025)

## CERTIFICATE OF SERVICE

I hereby certify that on this day, November 14, 2025, I have served a copy of the foregoing

Complaint to the following individuals via the Court's CM/ECF filing system.

U.S. Department of Justice
Civil Division Commercial Litigation Branch
1100 L Street, NW,
8th Floor Washington, DC 20530
Email: nationalcourts.bidprotest@usdoj.gov

Clerk of Court
U.S. Court of Federal Claims
717 Madison Place, NW
Washington, DC 20439
(202) 357-6406
Email: CFC bidprotests@cfc.uscourts.gov

Holly A. Roth